UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ X

FRED M .KUBUS,                                    :      Case No.: _____
                                                 :
                     Plaintiff,                  :      **COMPLAINT**
                                                 :
          -against-                              :      **DEMAND FOR JURY TRIAL**
                                                 :
LIVONGO HEALTH, INC., GLEN                       :
TULLMAN, ZANE BURKE, CHRIS                       :
BISCHOFF, KAREN L. DANIEL, SANDRA                :
FENWICK, PHILIP D. GREEN, and                    :
HEMANT TANEJA,                                   :
                                                 :
                     Defendants.                 :

------------------------------------ X

Plaintiff, Fred M. Kubus ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against Livongo Health, Inc. ("Livongo" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Livongo, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed merger between Livongo and Teladoc Health, Inc. ("Teladoc") (the "Proposed Merger"). Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law.

2.      On August 5, 2020, Livongo entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which the Company's shareholders will receive (i) 0.5920 of a

share of Teladoc common stock, (ii) $4.24 in cash, and (iii) a special cash dividend equal to $7.09 for each share of Livongo common stock they own (the "Merger Consideration"). Based on the number of shares of Teladoc and Livongo common stock outstanding immediately prior to the completion of the merger, it is estimated that Teladoc stockholders will own approximately 58% and Livongo stockholders will own approximately 42% of the issued and outstanding shares of the combined company immediately following the completion of the merger.

3.      On September 15, 2020, in order to convince Livongo shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading definitive proxy statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act and in breach of the Individual Defendants' duty of disclosure.

4.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for Livongo and Teladoc; (ii) the valuation analyses performed by Livongo's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"), in support of its fairness opinion; and (iii) the background of the merger and potential conflicts of interest.

5.      The special meeting of Livongo shareholders to vote on the Proposed Merger is scheduled for October 29, 2020 (the "Shareholder Vote"). It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can cast an informed vote and properly exercise his corporate suffrage rights.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and breach of the duty of candor/disclosure. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to Livongo's

shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act and breach of the duty of candor/disclosure.

<u>**JURISDICTION AND VENUE**</u>

7.      This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8.      The Court has supplemental jurisdiction over the state law claim for breach of the duty of candor/disclosure pursuant to 28 U.S.C. § 1367.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1305 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316.

10.      Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Livongo's common stock trades on Nasdaq stock exchange, which is headquartered in this District, and Livongo hired Morgan Stanley, Skadden, Arps, Slate, Meagher & Flom LLP, and

D.F. King & Co., Inc. as advisors for the purposes of the Proposed Merger, all of which are also located in this District rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## **PARTIES**

11.     Plaintiff is, and at all relevant times has been, a holder of Livongo common stock.

12.      Defendant Livongo is a consumer facing digital health company. The Company's common stock trades on the Nasdaq stock exchange under the ticker symbol "LVGO".

13.     Individual Defendant Glen Tullman is, and at all relevant times has been, a director of the Company the Executive Chairman and Founder of Livongo.

14.     Individual Defendant Zane Burke is, and at all relevant times has been, a director of the Company and the Chief Executive Officer of Livongo.

15.     Individual Defendant Chris Bischoff is, and at all relevant times has been, a director of the Company.

16.     Individual Defendant Karen L. Daniel is, and at all relevant times has been, a director of the Company.

17.     Individual Defendant Sandra Fenwick is, and at all relevant times has been, a director of the Company.

18.     Individual Defendant Philip D. Green is, and at all relevant times has been, a director of the Company.

19.     Individual Defendant Hemant Taneja is, and at all relevant times has been, a director of the Company.

20.     The Individual Defendants referred to in ¶¶ 13-19 are collectively referred to herein as the "Individual Defendants" and/or the "Board", and together with Livongo they are

referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### I.      Background and the Proposed Merger

21.      Livongo is a consumer digital health company. The Company offers Enter Livongo platform, which leverages data science and technology, creates a personalized experience for people with chronic conditions. The Company focuses on developing an approach for diabetes management that combines technology with coaching. The Company's Livongo platform offers a range of solutions, such as Livongo for Diabetes, Livongo for Hypertension, Livongo for Prediabetes and Weight Management and Livongo for Behavioral Health by myStrength. The Company uses a digital approach to delivering evidence-based interventions including cognitive behavioral therapy, acceptance and commitment therapy, positive psychology, mindfulness, and motivational interviewing to help resolve clinical conditions, build resiliency, manage stress, improve mood, sleep better, or simply find daily inspiration.

22.      Teladoc provides virtual access to healthcare with a portfolio of services and solutions, which includes various medical subspecialties from non-urgent, episodic needs, such as flu and upper respiratory infections, to chronic, complicated medical conditions, such as cancer and congestive heart failure. It provides virtual healthcare services on a business-to-business (B2B) basis to its clients and provides services to consumers directly and through channel partners. The company's consumer brands, including Teladoc, Advance Medical, Best Doctors, BetterHelp and HealthiestYou, provides access to advice and resolution to a range of healthcare needs. Its technology enables consumers to manage their own electronic medical records. It also provides access to a message center, provider finder, image upload capability and enable real-time sharing capabilities with providers that includes visit scheduling.

23.     On August 5, 2020, Livongo and Teladoc issued a joint press release announcing the Proposed Merger, which states in relevant part:

### Teladoc Health and Livongo Merge to Create New Standard in Global Healthcare Delivery, Access and Experience

- The only consumer centered virtual care platform for full spectrum of health needs to address accelerating consumer and client demand

- Combination of highly complementary leaders in virtual care and chronic condition management uniquely positioned to unlock the full potential of virtual care

- New high-quality care delivery model creates new category of solutions focused on delivering unrivaled whole-person care for better health outcomes at lower cost

- Significant quantifiable revenue expansion opportunities increase shareholder value as two of the fastest-growing companies in healthcare technology combine

PURCHASE, NY and MOUNTAIN VIEW, Calif., Aug. 05, 2020 (GLOBE NEWSWIRE) -- Teladoc Health (TDOC), the global leader in virtual care, and Livongo (LVGO), the leading Applied Health Signals company – today announced that they have entered into a definitive merger agreement. This merger represents a transformational opportunity to improve the delivery, access and experience of healthcare for consumers around the world. The highly complementary organizations will combine to create substantial value across the healthcare ecosystem, enabling clients everywhere to offer high quality, personalized, technology-enabled longitudinal care that improves outcomes and lowers costs across the full spectrum of health.

Under the terms of the agreement, which has been unanimously approved by the Board of Directors of each company, each share of Livongo will be exchanged for 0.5920x shares of Teladoc Health plus cash consideration of $11.33 for each Livongo share, representing a value of $18.5 billion based on the closing price of Teladoc Health shares as of August 4, 2020. Upon completion of the merger, existing Teladoc Health shareholders will own approximately 58 percent and existing Livongo shareholders will own approximately 42 percent of the combined company.

The combination of Teladoc Health and Livongo creates a global leader in consumer centered virtual care. The company will have expected 2020 pro forma revenue of approximately $1.3 billion, representing year over year pro forma growth of 85 percent. Demonstrating the power of the combined platform and the

scalability of the data driven and virtual ethos, the combined company is expected to have pro forma Adjusted EBITDA of over $120 million for 2020.

"This merger firmly establishes Teladoc Health at the forefront of the next-generation of healthcare," said Jason Gorevic, CEO of Teladoc Health. "Livongo is a world-class innovator we deeply admire and has demonstrated success improving the lives of people living with chronic conditions. Together, we will further transform the healthcare experience from preventive care to the most complex cases, bringing 'whole person' health to consumers and greater value to our clients and shareholders as a result."

"This highly strategic combination will create the leader in consumer-centered virtual care and provides a unique opportunity to further accelerate the growth of our data-driven member platform and experience," said Glen Tullman, Livongo Founder and Executive Chairman. "By expanding the reach of Livongo's pioneering Applied Health Signals platform and building on Teladoc Health's end-to-end virtual care platform, we'll empower more people to live better and healthier lives. This transaction recognizes Livongo's significant progress and will enable Livongo shareholders to benefit from long-term upside as the combined company is positioned to serve an even larger addressable market with a truly unmatched offering."

**Strategic and financial benefits of the combination**

- **The combination joins two highly complementary companies to create an unmatched, comprehensive platform for virtual healthcare delivery**. By bringing together leaders in virtual health and chronic condition management, the merger combines comprehensive clinical expertise with a rich technology and data-driven experience; prevention and chronic condition management with acute and specialty care; behavior change expertise with data science; global footprint with products meeting global need; access with innovation and two of the fastest growing companies in health technology.

- **Combining clinical expertise with deeper, more comprehensive consumer health insights to deliver the highest quality care and improve outcomes.** The transaction combines Teladoc Health's broad integrated services across virtual care with Livongo's data-driven approach to providing actionable, personalized, and timely health signals to create a comprehensive virtual healthcare delivery system. The combined company's platform will feature the full range of health support – from AI+AI engine-driven "nudges" and health coaches to therapists and board-certified physicians and the world's leading specialists – available anytime, anywhere to ensure the right care is always delivered.

- **Focusing on prevention as a critical lever for reimagining healthcare delivery.** Together, Teladoc Health and Livongo will empower consumers to proactively manage their wellbeing with the help of a single, comprehensive partner across the full spectrum of health, whether they are at-risk of, or living with, chronic

conditions or need acute care. By tapping into data and care anytime, anywhere, consumers will have real-time information and guidance to stay healthy and avoid the unchecked progression of illness.

- **Joining two leaders in consumer behavior change, bringing millions more consumers into virtual care and building even deeper consumer and provider relationships.** Teladoc Health's flywheel approach to continued member engagement combined with Livongo's proven track record of using data science to build consumer trust will accelerate the combined company's development of longitudinal consumer and provider relationships.

- **Expanding Teladoc Health's portfolio and footprint with Livongo's leadership in addressing underpenetrated and underserved chronic condition populations.** Teladoc Health's global reach, including 70 million customers in the United States, and significant access to high growth segments in that market (e.g., Medicare and Medicaid) give Livongo a stronger platform to reach millions of new consumers, at risk of, or living with chronic disease.

- **Complementary cultures and operating philosophies that put a premium on health equity.** Teladoc Health has long focused on virtual care as the "great equalizer" expanding access to underserved communities facing negative social determinants of health. With Livongo's focus on chronic conditions, which disproportionately impacts underserved communities, the combined company will be positioned to make meaningful progress on addressing long-standing disparities.

- **Significant shareholder value creation and revenue acceleration opportunities.** The combined company is positioned to execute quantified opportunities to drive revenue synergies of $100 million by the end of the second year following the close, reaching $500 million on a run rate basis by 2025. These opportunities include increased cross-selling and penetration into each company's client base. They also include accelerating Livongo's international expansion through Teladoc Health's existing footprint, improving combined company member retention rates and driving more efficient enrollment. In addition to the quantified synergies, the combination offers significant unquantified synergies by enabling new care models and next generation solution opportunities. As a result of efficiencies, the combined company is expected to achieve cost synergies of $60 million by the end of the second year following the close, which can be reinvested to drive topline growth and margin expansion.

**Leadership & Governance**

Jason Gorevic, current CEO of Teladoc Health, will be the CEO of the combined company. Led by Teladoc Health chairman, David Snow, the newly combined Teladoc Health Board of Directors will be composed of eight members of the Teladoc Health Board and five members of the Livongo Board.

**Additional Transaction Details**

The transaction is expected to close by the end of Q4 2020, subject to regulatory and Teladoc Health and Livongo shareholder approvals and other customary closing conditions. The newly combined company will be called Teladoc Health and will be headquartered in Purchase, New York.

**Advisors**

Lazard served as exclusive financial advisor to Teladoc Health and Paul, Weiss, Rifkind, Wharton & Garrison LLP served as legal advisor.
Morgan Stanley served as exclusive financial advisor to Livongo and Skadden, Arps, Slate, Meagher & Flom LLP served as legal advisor.

24.     The Merger Consideration represents inadequate compensation for Livongo shares. Livongo has shattered expectations and announced positive financial results in consecutive quarters leading up to the Proposed Merger. In fact, from the beginning of the 2020 until the announcement of the Merger Agreement, LVGO stock price increased nearly 500% from $25.22 per share to nearly $150 per share. Moreover, immediately upon the announcement of the Proposed Merger, Teladoc's stock price fell nearly 25%. The implied value of the Merger Consideration immediately preceding the announcement of the Merger Agreement represented a derisory 10% premium to a stock that was on blistering growth trajectory. Therefore, it is imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Merger.

**II.     The Proxy Omits Material Information**

25.     On September 15, 2020, Defendants filed the materially incomplete and misleading Proxy with the SEC.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy

misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision in connection with the Proposed Merger.

The Misleadingly Incomplete Financial Projections

26.     First, the Proxy omits critical financial projections for both Livongo and Teladoc, including net income projections (the "Net Income Projections"). Defendants elected to summarize multiple sets of financial projections, but they excised and failed to disclose the readily available Net Income Projections. By disclosing certain projections in the Proxy and withholding the Net Income Projections, Defendants render the summary tables of projections on pages 124-125 of the Proxy materially incomplete and provide a misleading valuation picture of Livongo and Teladoc. Simply put, net income projections are irreplaceable when it comes to fully, fairly, and accurately understanding a company's projections and value.

27.     Second, page 124 of the Proxy states that Livongo management calculated projections for Teladoc through 2030. Further, Morgan Stanley utilized these projections in performing the valuation analyses underlying its fairness opinion. However, the table of Teladoc final projections on page 125 only includes financial metrics through the year 2022. Therefore, the omission of the Later Year Projections renders the projections disclosed and the summary of the analyses performed misleadingly incomplete.

28.     Third, the Proxy fails to disclose both Case 2 Teladoc Projections utilized by Morgan Stanley in their valuation analyses and the Street Case of projections for each of Livongo and Teladoc utilized by Morgan Stanley in their valuation analyses. This omission renders the summaries of the corresponding valuation analyses and projections misleadingly incomplete.

29.     Fourth, the Proxy makes multiple references to potential synergies or pro forma financial impacts of the Proposed Merger, but fails to disclose the corresponding projections

reflecting this information. In fact, Morgan Stanley specifically reviewed the pro forma impact of the merger on Teladoc's earnings per share, cash flow, consolidated capitalization and certain financial ratios and discussed the synergy prospects of Livongo and Teladoc with senior executives of Livongo and Teladoc. The failure to disclose these projections renders the discussions of this information in the Proxy misleadingly incomplete.

30.     Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the projections relied upon by Morgan Stanley and the Board but failed to disclose the Net Income Projections, the Later Year Projections, the Street Case Projections, Case 2 Teladoc projections, and the pro forma projections. These omissions render the summary of: the projection tables; Morgan Stanley's valuation analyses; and each company's financial picture in the Proxy misleadingly incomplete.

The Misleadingly Incomplete Summary of Morgan Stanley's Fairness Opinion

31.     The Proxy describes Morgan Stanley's fairness opinion and the various valuation analyses performed in support of their opinion.  Defendants concede the materiality of this information in citing the fairness opinion and its valuation analyses among the "material" factors the Board considered in making its recommendation to Livongo shareholders. Proxy at 95; *see also* Proxy at 108 ("The following is a summary of the material financial analyses performed by

Morgan Stanley in connection with its preparation of its oral opinion as of August 5, 2020 that was subsequently confirmed in its written opinion letter dated August 5, 2020 and delivered to the Livongo board of directors."). However, the summary of the fairness opinion and analyses provided in the Proxy fails to include key inputs and assumptions underlying the analyses. Without this information, as described below, Livongo shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place the fairness opinion in determining how to vote on the Proposed Merger. This omitted information, if disclosed, would significantly alter the total mix of information available to Livongo's shareholders.

32.     In summarizing the *Discounted Cash Flow Analysis* prepared by Morgan Stanley for each of Livongo and Teladoc, the Proxy fails to disclose the following key information: (i) the actual unlevered free cash flows used for each case in each analysis, (ii) the inputs and assumptions underlying the discount rate ranges (including CAPM components); (iii) Livongo's net debt; (iv) Livongo's estimates for net operating loss and tax credit carryforwards; (v) Teladoc's net debt; (vi) Teladoc's net operating loss and tax credit carryforwards; (vii) the terminal values calculated for each analysis.

33.     These key inputs are material to Livongo shareholders, and their omission renders the summary of the *Discounted Cash Flow Analysis* incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" Id. As Professor Davidoff explains:

There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id*. at 1577-78.

34.    Without the above-omitted information Livongo shareholders are misled as to the reasonableness or reliability of Morgan Stanley's analysis, and unable to properly assess the fairness of the Proposed Merger. This is especially true here, given the divergence of definitions of unlevered free cash flow and projection cases from the summary of the DCF to the projections section of the Proxy. As such, these material omissions render the summary of the *Discounted Cash Flow Analysis* included in the Proxy misleadingly incomplete.

35.    Next, in summarizing Morgan Stanley's *Precedent Transaction Multiples Analysis*, the Proxy fails to disclose the individual multiples of each transaction utilized in the analysis. A fair summary of a comparable companies or transactions analysis requires the disclosure of the actual multiples for each company or transaction used in the analysis—as illustrated in the summary of Morgan Stanley's *Public Trading Comparables Analyses*. Merely providing selected representative range that a banker calculated without any further information is insufficient, as shareholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to present the Merger Consideration in the most favorable light. Accordingly, the omission of this material information

renders the summary of this analyses provided in the Proxy misleading.

36.     Similarly, in summarizing the *Analyst Price Targets* Morgan Stanley reviewed for each company, the Proxy omits the individual price targets observed or the dates of those price targets; instead, only providing a range of the price targets. Given the breadth of the price targets provided, it is unclear if those price targets were summarized fairly or present a skewed version of each company's value. The disclosure here is insufficient and renders the summary misleadingly incomplete.

The Misleadingly Incomplete Summary of the Background and Conflicts of Interest

37.     The Proxy contains a misleadingly incomplete summary of the events leading up to the Merger, which omits material facts. Once a company travels down the road of partial disclosure of the history leading up to a merger, they had an obligation to provide shareholders with an accurate, full, and fair characterization of those historic events. Even a non-material fact can trigger an obligation to disclose additional, otherwise non-material facts in order to prevent the initial disclosure from materially misleading the stockholders.

38.     First, the *Background of the Merger* section of the Proxy details Teladoc's due diligence in performing a sales process, but fails to disclose why Livongo and Morgan Stanley did not perform a market check to see if any other more lucrative offers were available.

39.     Second, the composition of the board of the directors of the combined company (eight current directors of Teladoc and five current directors of Livongo) is touted to shareholders as a reason to support the Proposed Merger, but the Proxy fails to disclose the timing and nature of the negotiations leading to the determination of the board seats for the combined company. Such information is important to shareholders because negotiating for Board seats is a conflict of interest that could cause directors to value their own continued involvement in the Company over

the value offered to shareholders.

40.     Third, the Proxy provides a misleading summary of the conflicts of interest facing Morgan Stanley. On page 119, the Proxy states that Livongo may pay Morgan Stanley a discretionary fee of up to approximately $11 million—in addition to the $106 million already to paid—but fails to disclose under what circumstances the discretionary ten figure payment might be paid.

41.     Additionally, on page 120, the Proxy states "[i]n the two years prior to the date of Morgan Stanley's opinion, Morgan Stanley and its affiliates have provided financing services to Livongo, and have received aggregate fees of approximately $10 million to $20 million in connection with such services." However, the Proxy fails to disclose the amount of fees Morgan Stanley received for underwriting the Company's IPO in 2019 or any other non-financing services or any compensation Morgan Stanley expects to receive in the future. Disclosure of "any compensation received or to be received as a result of the relationship between" a financial advisor and the company it advises, or its related affiliates, is required pursuant to 17 C.F.R. § 229.1015(b)(4).

42.     Further, the Proxy fails to state how Teladoc will fund the cash portion of the Merger Consideration, including whether there will be debt financing and whether Morgan Stanley will participate in any debt offerings related to the Proposed Merger. The use of a special dividend from Livongo in combination with the cash portion of the Merger Consideration to be paid by Teladoc indicates that Teladoc may lack the capacity to fund the cash Merger Consideration out of pocket and is thus likely to need financing to execute the Proposed Merger. If true, this information must be disclosed to shareholders

43.     Moreover, page 79 of the Proxy indicates that Livongo may fund the special

dividend though a loan; however, the Proxy omits the nature of the loan or who would be providing the loan. It is critical for shareholders to be able to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own proprietary financial interest in a proposed transaction must be carefully considered when assessing how much credence to give its analysis. A reasonable shareholder would want to know what important economic motivations that the advisor might have. This is especially true here, given the rather unusual method of mixed Merger Consideration split-up by cash payment and dividend payment. Given that Morgan Stanley was involved in advising the Company and the Board on this merger structure, the omission of the above-information creates misleadingly incomplete disclosures.

44.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act and the Individual Defendants' duty of candor/disclosure.  Absent disclosure of the foregoing material information prior to the forthcoming Shareholder Vote, Plaintiff will be unable to cast an informed vote regarding the Proposed Merger, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I
## Against All Defendants for Violations of Section 14(a) of the Exchange Act

45.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or

16

authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

47.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

48.     Item 1015 of Regulation M-A requires "[a]ny report, opinion or appraisal relating to the consideration or the fairness of the consideration to be offered to security holders or the fairness of the transaction to the issuer or affiliate or to security holders who are not affiliates" to "[d]escribe any material relationship that existed during the past two years or is mutually understood to be contemplated and any compensation received or to be received as a result of the relationship between: (i) The outside party, its affiliates, and/or unaffiliated representative; and (ii) The subject company or its affiliates." 17 CFR § 229.1015.

49.     The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

50.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Merger.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for Livongo and Teladoc; (ii) the valuation analyses performed by Morgan Stanley in support of its fairness opinion; and (iii) the background of the merger and conflicts of interest.

51.     In so doing, Defendants made misleading statements of fact and/or omitted

material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

52.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that Morgan Stanley reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided them, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Morgan Stanley' analyses in connection with their receipt of the fairness opinion, question them as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material

misstatements or omissions.

53.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

54.     Livongo is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

55.     The misrepresentations and omissions in the Proxy are material and Plaintiff will be deprived of his right to cast an informed vote on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of Livongo's shareholders.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **COUNT II**
## **Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

56.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

57.     The Individual Defendants acted as controlling persons of Livongo within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

58.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in preparing this document.

60.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

61.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62.     As set forth above, the Individual Defendants had the ability to exercise control

over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

63.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III
### Against the Individual Defendants for Breach of Fiduciary Duty of Candor/Disclosure

64.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

65.     By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

66.     As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Proxy to be disseminated to Plaintiff and the Company's other public shareholders.

67.     The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

68.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the special meeting of Livongo shareholders to vote on the Proposed Merger or consummating the Proposed Merger, until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.     Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 16, 2020

**MONTEVERDE & ASSOCIATES PC**

  */s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*